IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| OVERBROOK PROPERTIES, LLC AND WILLIAM WOLVERTON | CIVIL ACTION |
|---|---|
| v. | NO. 18-630 |
| ALLSTATE INDEMNITY COMPANY | |

### MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**July 17, 2018**

### I.　　Introduction

In this case, Plaintiffs Overbrook Properties and William Wolverton allege that Defendant Allstate Indemnity Company committed breach of contract in refusing to pay their insurance claim for water damage to an insured residential property, and acted in bad faith in evaluating their claim and making the determination to deny it. Plaintiff brings a breach of contract cause of action and a statutory bad faith claim against Allstate. Presently before the Court is a Motion to Dismiss Count II of the Amended Complaint—the statutory bad faith claim—for failure to state a claim for which relief can be granted and a Motion to Strike certain parts of the Amended Complaint, filed by Allstate. For the reasons discussed below, Defendant's Motion to Dismiss will be denied, and Defendant's Motion to Strike will be granted in part and denied in part.

### II.　　Factual History

Taking Plaintiff's allegations as true, the factual background is as follows. Plaintiff Overbrook Properties, LLC is located in Narberth, Pennsylvania, as is Plaintiff William Wolverton's place of business. (Amended Complaint, ¶¶ 1-2.) Defendant Allstate Indemnity Company is headquartered in Northbrook, Illinois, and regularly conducts business in

1

Philadelphia, Pennsylvania. (Id., ¶ 3.) Overbrook owned a three unit residential apartment building located at 5932 Ridge Avenue in Philadelphia (the "property"). (Id., ¶ 4.) The three units were rented by tenants with a monthly rental revenue of $2,200.00. (Id., ¶ 5.) Wolverton is a manager and member of Overbrook, as are Gregory Wax and Francis X. Ounan. (Id., ¶ 6.) In 2009 Plaintiffs obtained an insurance policy for their interest in the property. (Id., ¶ 8.) In 2011 Plaintiffs sustained a casualty claim at the premises which Allstate refused to pay. (Id., ¶ 9.) Plaintiffs obtained an arbitration award against Allstate for this casualty claim, after which Allstate attempted to terminate Plaintiffs' policy. (Id., ¶ 10.) The Pennsylvania Department of Insurance ruled that this attempt was unlawful, however, and ordered Allstate to renew Plaintiffs' policy on the property. (Id., ¶ 11.) On or about June 29, 2016, Allstate issued Policy Number 928 423 525, "Allstate Landlords Package Policy" ("Policy"), to Plaintiffs, which was a renewal of Plaintiffs' policy insuring their interest in the property. (Id., ¶ 7.) Plaintiffs have paid all premiums as they have become due. (Id., ¶ 12.)

On or about January 12, 2017, leaking water was observed in all three apartments of the property emanating from the toilet in the third floor apartment and the sewer stacks in the second and first floor apartments, causing water damage to the premises. (Id., ¶ 14.) There had not been any continuous or repeated leakage of water, steam, or fuel from any of the pipes, walls, plumbing fixtures, floors, stacks, or ceilings prior to that date. (Id., ¶ 13.) Plaintiffs reported the January 12, 2017 leak and resulting water damage to Allstate on or about January 16, 2017.[1] (Id., ¶ 15.) In the weeks and months following the reporting of this claim, Plaintiffs performed all of the post-loss obligations required under the Policy, including providing Allstate with Notice of the Loss, a Sworn Statement in Proof of Loss, and repair estimates. (Id., ¶ 16.)

---

[1] The Amended Complaint states the date as January 16, 2016, however all other dates alleged relating to damage to the Property and subsequent events refer to 2017. The Court assumes this was a mistake and considers this to be a reference to January 16, 2017.

Plaintiffs took all reasonable steps to preserve the property after the water damage and also allowed Allstate to access the property. (Id., ¶ 17.) However, Allstate has refused to pay Plaintiffs' claim. (Id., ¶¶ 20-21.)

Allstate denied Plaintiff's claim solely based on an unsigned report form an unnamed person on a letterhead from a plumbing company dated March 30, 2017, which states: "The amount of water damage seen would indicate that the damage had occurred from continuous water use and not from a one-time occurrence or had contributed to possible prior water damage when the pipe on the first floor has been replaced." (Id., ¶ 29.) The unsigned report did not provide a factual basis to support its conclusion. (Id., ¶¶ 30-31.) Allstate failed to consider a statement, reports and documents provided by Plaintiffs and their representatives communicating that January 12, 2017 was the first time that any water damage was observed, and failed to consider or give adequate weight to Plaintiffs' contractor's report which stated that the water damage occurred as a result of a deteriorated toilet flapper along with a broken fluid master. (Id., ¶¶ 32-33.)

Plaintiffs sustained repair damages to the property in the amount of $32,671.00, and the loss of rental income from all three apartments from January 12, 2017 through November 20, 2017, for a total loss of rental income of $24,200.00, solely as a result of the water damage originating on or about January 12, 2017. (Id., ¶¶ 18-19.) As a result, Plaintiff Overbrook was unable to pay the mortgage on the property and was forced to sell it at a loss of $75,000.00 on or about November 30, 2017. As a result of Allstate's conduct, Plaintiffs have suffered damages in terms of having to hire counsel to prosecute this claim, having to hire experts to assist them in the assessment of their damages, and having to pay for the expenses for the repairs and/or replacements to the premises that should have been paid by Allstate. (Id., ¶ 26.)

### III.     Procedural History

Plaintiffs filed the original Complaint in this case on January 11, 2018, in the Philadelphia Court of Common Pleas, and Defendant filed a Notice of Removal to this Court on February 9, 2018 (ECF 1).  On February 16, 2018, Defendant filed a Motion to Dismiss the Complaint and a Motion to Strike parts of the Complaint (ECF 3).  This became moot on March 1, 2018 when Plaintiffs filed the first Amended Complaint (ECF 4) stating two causes of action:

I.  Breach of Contract –Defendant Allstate breached the Policy by refusing to accept and pay Plaintiffs' claim for water damage to the premises which arose solely from a sudden and accidental direct physical loss to the premises.

II. Statutory Bad Faith Claim pursuant to 42 Pa. C.S.A. § 8371 – Defendant Allstate acted in bad faith in that it failed to fairly evaluate Plaintiffs' claim and had no reasonable basis for denying the claim.

Defendant filed a Motion to Dismiss Count II of the Amended Complaint, and a Motion to Strike Plaintiff's demand for attorneys' fees from Count I and Paragraphs 9-11, and 37 of the Amended Complaint, on March 6, 2018 (ECF 5).  Plaintiff responded in opposition on March 12, 2018 (ECF 6).

### IV.     Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions;

4

therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 556 n.3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Rule 12(f) states, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" Steak Umm Co., LLC v. Steak 'Em Up, Inc., No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009), citing Johnson v. Anhorn, 334 F.Supp.2d 802, 809 (E.D. Pa. 2004). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Dev. Corp. v. Carlson Corp., No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990).

Motions to strike are to be decided "on the basis of the pleadings alone." N. Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F.Supp. 154, 159 (E.D. Pa. 1994) (citations omitted). Striking a pleading or a portion of a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." DeLa Cruz v. Piccari Press, 521 F. Supp.2d 424, 428 (E.D. Pa. 2007) (quotations omitted). See also Giuliani v. Polysciences, Inc., No. CV 17-1705, 2017 WL 3226002, at *3 (E.D. Pa. July 31, 2017).

## V.     Discussion

**1. Allstate's Motion to Dismiss Plaintiffs' Statutory Bad Faith Claim**

Plaintiffs assert that Allstate acted in bad faith, pursuant to 42 Pa. C.S.A. § 8371, in evaluating their coverage claim under the Policy for water damage to the Property that occurred in January, 2017.

Allstate argues that under Pennsylvania law, an insurer is insulated from a claim for bad faith when it has a reasonable basis for the relevant coverage decision, including when it relies on the conclusions of an independent expert in making that decision. Defendant's Memorandum of Law in Support of Its Motion to Dismiss and Motion to Strike, at 8-9. Because Allstate relied upon the conclusions of a plumber in making its coverage decision, there can be no claim for bad faith. Id. at 9-11. Even in light of Plaintiffs' allegation that Allstate or its expert failed to give adequate weight to certain evidence, the bad faith claim must be dismissed because the standard for bad faith merely requires that an insurer had a reasonable basis for its conclusion about coverage, not that an insurer eliminated all possibilities at odds with that conclusion. Id. at 10.

Plaintiffs respond that Allstate's reliance on a report prepared by a plumber in making its coverage decision in this case was unreasonable, given that the report was unsigned and its author unnamed, it failed to state the factual basis for its conclusion, and it did not state its

6

conclusion within a reasonable degree of plumbing certainty. Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss and to Strike, at 6-12.

42 Pa. C.S.A. § 8371 provides that in the context of a claim arising under an insurance policy, "if the court finds that the insurer has acted in bad faith toward the insured," the court may do any of the following:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.

The operative test for evaluating whether an insurer has "acted in bad faith" is that set out in Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680 (Pa. Super. Ct. 1994). See, Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997); see also, Wolfe v. Allstate Property & Cas. Ins. Co., 790 F.3d 487, 498 (3d Cir. 2015) ("Section 8371 does not define 'bad faith,' but we have predicted that the Pennsylvania Supreme Court would follow the definition of bad faith, and test for liability, set out by the Pennsylvania Superior Court in Terletsky.") Terletsky adopted the definition of "bad faith" set out in Black's Law Dictionary:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Terletsky, 649 A.2d at 125 (quoting Black's Law Dictionary 139 (6th ed. 1990)). Despite reference to an insurer's motive in this definition, there is no requirement that a plaintiff show that an insurer was motivated by a "dishonest purpose" in order to sustain a statutory bad faith

claim. Klinger, 115 F.3d at 233-34. Rather, courts impose a simple two part test in evaluating claims of bad faith brought under Section 8371: a plaintiff must demonstrate (1) "the insurer did not have a reasonable basis for denying benefits under the policy," and (2) "the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." Wolfe v. Allstate, 790 F.3d at 498, (citing Terletsky, 649 A.2d at 688).

An insurer need not demonstrate that their evaluation of an insured's claim was *correct* in order to show that they had a reasonable basis for a coverage decision, and thereby prevail against a statutory bad faith claim. See, Smith v. Allstate Ins. Co., 904 F.Supp.2d 515, 525 (W.D. Pa. Oct. 24, 2012); see also, Bostick v. ITT Hartford Group, Inc., 56 F.Supp.2d 580, 587 (E.D. Pa. July 27, 1999) ("Bat faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law.").[2] Rather, an insurer simply must show that it had a reasonable basis for a coverage decision based on the information available at the time the decision was made. See, J.C. Penney Life Ins. Co. v. Pilosi, 393 F.2d 356, 367-68 (3d Cir. 2004). "In deciding whether an insurer had a reasonable basis for denying benefits, a court should examine what factors the insurer considered in evaluating a claim." Padilla v. State Farm Mut. Auto. Ins. Co., 31 F.Supp.3d 671, 675 (E.D. Pa. July 8, 2014) (citing Terletsky, 649 A.2d at 688-89). The reasonable basis standard imposes a requirement "that the insurer properly investigate claims prior to refusing to pay the proceeds of the policy to

---

[2] In fact, some courts in this district have gone so far as to hold that the first prong of the statutory bad faith test is a purely objective one; that is, that an insurer need not demonstrate that their evaluation of an insured's claim was reasonable in order to prevail against a statutory bad faith claim, but rather merely that some reasonable basis exists for reaching the same conclusion, even where it is clear that the insurer did not rely on that reason. Williams v. Hartford Cas. Ins. Co., 83 F.Supp.2d 567 (E.D. Pa. Feb. 22, 2000). Other courts, however, have rejected such a far reaching approach. See, Shannon v. New York Cent. Mut. Ins. Co., 2013WL 6119204, at *3 (M.D. Pa. Nov. 21, 2013) ("Given the remedial purpose underpinning the Bad Faith Statute, we are not persuaded that permitting an insurer to evade its statutory obligation due to some fortuitous fact to which it was oblivious is consistent with the legislature's intent."). Because it is not necessary for this Court to make a judgment on whether the lack of a reasonable basis requirement is an objective test in order to evaluate Plaintiff's claim, we do not reach this question here.

its insured." Bombar v. W. Am. Ins. Co., 932 A.2d 78, 92 (Pa. Super. Ct. 2007) (relying on Hollock v. Erie Ins. Exch., 842 A.2d 409, 415 (Pa. Super. Ct. 2004)). Ultimately, "[b]ad faith claims are fact-specific and depend on the conduct of the insurer vis-à-vis its insured." Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 887 (Pa. Super. Ct. April 12, 2000). Courts must analyze the facts at hand to determine whether an insurer's decision process on a particular insurance claim was sufficient such that it cannot be said to constitute bad faith as a matter of law.

Plaintiffs allege that Allstate's reliance on only one expert report, that was written by an unnamed plumber and was not signed, was insufficient to establish a reasonable basis to deny their claim. Plaintiffs additionally assert that the plumber's report did not provide a factual basis to support its conclusion. The report does indicate a factual basis for the plumber's judgments about the cause of the damage—namely, "the amount of water damage seen"—however, this reasoning suggests that the plumber considered only surface level evidence, and offered quite a thin analysis of the potential evidence available for determining the cause of the damage. The question is whether, taking these allegations in the light most favorable to Plaintiffs, they plausibly state a claim for statutory bad faith. At the motion to dismiss stage, this Court concludes that they do.

Allstate argues that because it relied on an expert report in making its coverage decision, it cannot plausibly have acted in bad faith. Where courts have found that an insurer's reliance on reports regarding investigation into a claim is sufficient to preclude a finding of bad faith, however, the facts reflect a much more comprehensive investigation process and more detail relied upon than is alleged here. For example in Gold v. State Farm Fire and Cas. Co., 880 F.Supp.2d 587, 598-99 (E.D. Pa. July 24, 2012), the court granted summary judgment in favor of

9

an insurance company on a statutory bad faith claim relating to a claim which was "thorough[ly]" investigated, including a representative of the insurer conducting a site visit during which other potential causes of damage were eliminated and the insurer's representative fully explained his rationale to the insured; in that same case, however, the court denied summary judgment on a statutory bad faith claim tied to a separate insurance claim in light of the insurer's refusal to conduct an onsite inspection, a very short (twelve minutes long) investigation, and the insurer's rejection of the insured's offer to have an independent investigation conducted. The facts alleged by Plaintiffs much more closely resemble the facts at issue in the second claim, which the court permitted to move to trial on the basis that a finding of statutory bad faith could not be ruled out as a matter of law.

The cases that Allstate relies on in its Motion to Dismiss brief reflect a similar pattern. For example, in <u>Bostick v. ITT Hartford Group, Inc.</u>, the court granted summary judgment in favor of an insurer on a statutory bad faith claim where the insurer relied on a detailed report that reviewed significantly more evidence than the plumber is alleged to have considered here. <u>Bostick</u>, 56 F.Supp.2d at 587. Similarly, in <u>Sanders v. State Farm Ins. Co.</u>, the court affirmed a finding in favor of an insurer on a statutory bad faith claim at the summary judgment stage based on evidence that the insurer inspected the property three separate times, each time concluding that there was no basis for coverage. <u>Sanders v. State Farm Ins. Co., 47 Pa.</u> D. & C. 4th 129, 136, 142-43 (Pa. Com. Pls. July 27, 2000). In comparison, Plaintiffs allege that Allstate relied on only one report that was both lacking in detail and authored by an unidentified individual, and that Allstate did not give adequate consideration to their independent expert's report.

Taking the allegations in the light most favorable to the Plaintiffs as we must at this stage, it cannot be said that Allstate did not act in bad faith as a matter of law in making its

decision to deny Plaintiffs' claim. Allstate's Motion to Dismiss Plaintiffs' statutory bad faith claim will be denied.

### 2. Allstate's Motion to Strike Plaintiffs' Demand for Attorneys' Fees for Breach of Contract

Allstate argues that Plaintiffs' demand for attorneys' fees in association with their breach of contract claim should be stricken from the Amended Complaint because under Pennsylvania law, attorneys' fees are only recoverable as damages in limited circumstances, none of which apply in the present case. Def.'s Memo. at 11-13.

Plaintiffs concede to their demand for attorneys' fees in Count I being stricken. Pl.s' Response, at 12. As such, Allstate's Motion to Strike this language will be granted, and the demand for attorneys' fees in Plaintiffs' breach of contract claim will be stricken from the Amended Complaint.

### 3. Allstate's Motion to Strike Paragraphs 9-11, and 37 of the Amended Complaint

Allstate argues that paragraphs 9-11, and 37 of the Amended Complaint should be stricken as immaterial and impertinent. Paragraphs 9 and 10 refer to a claim made by Plaintiffs against Allstate in 2011 that has already been litigated, and therefore cannot be re-litigated in this case. Id. at 15. Paragraphs 11 and 37 allege facts relating to Allstate improperly canceling Plaintiffs' policy, conduct which is not relevant to a statutory bad faith claim under Pennsylvania law. Def.'s Memo. at 13-15.

Plaintiffs respond that the allegations regarding the 2011 claim they brought against Allstate and Allstate's alleged subsequent attempted termination of Plaintiffs' policy are relevant to the question of whether Allstate had knowledge of, or recklessly disregarded its lack of any reasonable basis for denying Plaintiffs' coverage claim for the January, 2017, water damage to the property. Pl.s' Memo. at 12-13.

A Motion to Strike is reviewed according to a very high standard, and should only be granted in rare circumstances. See, *supra*, 5-6. Allstate has failed to meet that high standard to establish that justice requires this Court to strike these paragraphs from the Complaint. The Motion to Strike will be denied.

## VI. Conclusion

Defendant's Motion to Dismiss will be denied. Defendant's Motion to Strike Plaintiffs' demand for attorneys' fees in Count I will be granted, pursuant to Plaintiffs' concession; Defendant's Motion to Strike paragraphs 9-11 and 37 from the Amended Complaint will be denied.

O:\Christina.2017\Overbrook Properties v. Allstate (18-630\MTD Amended Complaint Memorandum.docx